UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRANDON ANTHONY RAMOS,<br>Plaintiff, | : <br> : <br> : | CASE NO. 3:24-cv-00006 (MPS) |
| v. | : <br> : | |
| LIEUTENANT CHENEY, et al.,<br>Defendants. | : <br> : | APRIL 26, 2024 |

## INITIAL REVIEW ORDER

Plaintiff Brandon Ramos, incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case under 42 U.S.C. § 1983, naming eighteen defendants. ECF No. 1. The Court entered an initial review order requiring the plaintiff to file an amended complaint. ECF No. 11. The plaintiff filed two amended complaints—one on March 26, 2024 and the other on April 9, 2024. ECF Nos. 12, 13. Because "an amended complaint ordinarily supersedes the original and renders it of no legal effect," *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir. 1977), the Court conducts its initial review of the April 9, 2024 amended complaint. ECF No. 13. The plaintiff alleges in that amended complaint that the defendants used excessive force against the plaintiff while detaining him during a fight with another prisoner and then letting that other prisoner assault the plaintiff while he was detained. *See* ECF No. 13 ¶¶ 1-5. The plaintiff seeks monetary damages from the defendants. *Id.* at 9.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee.

*Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

## I.     Allegations

While the Court does not set forth all of the facts alleged in the plaintiff's amended complaint (ECF No. 13), it summarizes his basic factual allegations here to give context to its ruling and accepts the allegations as true for purposes of the ruling. The plaintiff was incarcerated in the Walker building of MacDougall-Walker Correctional Institution on July 19, 2022. *Id.* ¶ 1. The plaintiff got into a physical altercation with another prisoner. *Id.* ¶ 2. A correctional officer responded to the altercation, separated the plaintiff from the other prisoner, placed the plaintiff on the floor, and handcuffed him behind his back. *Id.* The correctional officer then began attacking the plaintiff, who "felt punches on the back of [his] head." *Id.* The plaintiff maintains that all named correctional officers could have stopped the attack but failed to do so. *Id.* ¶ 3.

The prisoner with whom the plaintiff was fighting was not detained. *Id.* ¶ 4. That prisoner kicked the plaintiff in the head while the plaintiff was handcuffed and subdued by officers. *Id.* Correctional officers then used pepper spray on the plaintiff while he was being attacked by the other prisoner. *Id.* ¶ 5. The plaintiff alleges that the correctional officers present failed to protect him from the other prisoner. *See id.* The plaintiff maintains he suffered physical injury resulting from the attacks, *id.* ¶ 4, and has been unable to sleep for years. *Id.* ¶ 6.

## II.    Discussion

The plaintiff contends that a correctional officer used excessive force against him and that other correctional officers stood by while that correctional officer and another prisoner assaulted him. The Department of Correction website shows that the plaintiff is an unsentenced inmate.[1] *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=304839 (last visited April 16, 2023). Thus, his claims are cognizable under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are brought under the Eighth Amendment while claims of pretrial detainees are brought under the Fourteenth Amendment).

### A. Use of Excessive Force

Pretrial detainees, like the plaintiff, enjoy the right to be free from excessive force under the Fourteenth Amendment. *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) (observing that "pretrial detainees and non-incarcerated persons rely on the constitutional guarantee of 'due process'" under the Fourteenth Amendment). To state a claim of excessive force under the Fourteenth Amendment, a plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Fletcher v. City of New London*, No. 3:16-CV-241, 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015)). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley*, 135 S.Ct. at 2473 (internal quotations omitted)). The Court "'must make this determination from the perspective of a reasonable officer on the scene, including

---

[1] The court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate locator information).

what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Id*. (quoting *Kingsley*, 135 S.Ct. at 2473).

Several factors are relevant to determining whether the officer's use of force was reasonable: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. (quoting *Kingsley*, 135 S.Ct. at 2473).

The plaintiff alleges a correctional officer punched him in the back of the head after he was handcuffed and on the ground. ECF No. 13 ¶ 2. He also maintains that correctional officers pepper-sprayed him after the other prisoner attacked him while on the ground. *Id.* ¶ 5. It may have been reasonable for the officer to take the plaintiff to the ground and handcuff him while he was fighting with another prisoner to maintain safety and order in the prison. But once the plaintiff was on the ground and handcuffed, "the relationship between the need for the use of force and the amount of force used" changed. The officer did not need to punch the plaintiff in the back of the head and pepper spray him to subdue him—he was already prone and handcuffed. At that point, the force used was not in proportion to what was necessary to maintain safety and order.

As a result of the officer's actions, in combination with other correctional officers' failure to protect against an assault by another prisoner, the plaintiff was injured and unable to sleep. *Id.* ¶¶ 4, 6. The correctional officer made no effort "to temper or to limit the amount of force" because the use of force continued to escalate from placing the plaintiff on the ground, to handcuffing him, to punching him in the head, to pepper-spraying him. "The severity of the security problem at issue" had been substantially reduced when the correctional officers punched and pepper-sprayed

4

the plaintiff. He was already on the ground, hand-cuffed behind his back. The officer could not have reasonably perceived the plaintiff to be a threat at that point. Plaintiff's Fourteenth Amendment excessive force claim will proceed.

### B. Failure to Intervene in Attack by Correctional Officer

The plaintiff alleges that other correctional officers could have intervened to stop the correctional officer's initial attack. *See* ECF No. 13 ¶ 3. To state a claim for a prison official's failure to intervene to stop or temper the use of force, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).

The plaintiff alleges that other correctional officers could have prevented the correctional officer from assaulting him. *See* ECF No. 13 ¶ 3. Based on the facts alleged, it appears that correctional officers were aware that the plaintiff's constitutional rights were being violated—they observed another correctional officer and prisoner assaulting a restrained and unresisting prisoner. *See id.* Although the plaintiff does not indicate how long these officers stood by and watched, it was allegedly long enough for their fellow correctional officer to land multiple blows to the plaintiff's head, *see id.* ¶ 2, and for a subsequent attack from another prisoner to commence. *See id.* ¶ 4. Thus, based on the allegations, it appears that correctional officers had a realistic

opportunity to intervene. The failure to intervene claim will proceed.

### C. Failure to Protect from Prisoner Assault

"Prison officials are constitutionally required to 'take reasonable measures to guarantee the safety of the inmates,' in particular, 'to protect prisoners from violence at the hands of other prisoners.'" *Rembert v. Cheverko*, No. 12-CV-9196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). "Because Plaintiff was a pretrial detainee and not a convicted prisoner at time of the alleged assault, his failure to protect claim is asserted pursuant to the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Delaney v. Westchester Cnty. Dep't of Corr.*, No. 19-CV-03524, 2021 WL 243066, at *2 (S.D.N.Y. Jan. 25, 2021) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

A prison official violates this requirement when (a) the inmate is incarcerated under conditions that "pose an unreasonable risk of serious damage to his health" and (b) the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the [official] knew, or should have known that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro,* 849 F.3d 17, 30, 35 (2d Cir. 2017) (noting that objective standard applies to deliberate indifference claims under Fourteenth Amendment).

The plaintiff was incarcerated under conditions posing a substantial risk of serious harm to him—namely, being handcuffed on the ground and punched by another officer before another prisoner began attacking the plaintiff. The plaintiff was especially vulnerable to attack in that moment, considering the other inmate with whom the plaintiff had been fighting was unrestrained.

The correctional officers showed deliberate indifference to the plaintiff's safety by not only failing to prevent the other prisoner from attacking, but by pepper-spraying the plaintiff while he was being attacked. This claim will also proceed.

### D. Defendants to be Sued

While the plaintiff's claims will proceed, they will not proceed against all defendants. Plaintiff names eighteen defendants. ECF No. 13 at 2-4. Eleven of these defendants are correctional officers, but seven are not. Some defendants cannot be sued.

The Connecticut Department of Correction cannot be sued because it is immune from suit under the Eleventh Amendment. *See Arriola v. Eady*, No. 301CV2302, 2003 WL 22132914, at *2 (D. Conn. Aug. 26, 2003) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). Moreover, several defendants cannot be sued because the plaintiff does not allege their personal involvement in the incident. "Generally, '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'" *Acosta v. Thomas*, 837 F. App'x 32, 35 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009))." Thus, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Id*. (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The plaintiff maintains that a "correctional officer" assaulted him. ECF No. 13 ¶ 1. But the plaintiff does not identify which correctional officer assaulted him. Likewise, the plaintiff refers to the "Reporting Officers" and "Reporting C/Os" as failing to protect him from the assaults of the unknown correctional officer and the other prisoner. *Id.* ¶¶ 3, 7. But he does not allege that any lieutenant, captain, or deputy warden either assaulted him or failed to protect against assaults by

another correctional officer. Therefore, claims against Lieutenant Cheney, Lieutenant Cauley, Captain Scagliarini, Mental Health Responding Employee Classon, Deputy Warden Johnson, and Captain Hollister must be dismissed for lack of personal involvement and because they cannot be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Because the plaintiff claims all named correctional officers failed to intervene in the assaults (and that one of these correctional officers assaulted the plaintiff), *see* ECF No. 13 ¶¶ 3, 5, all correctional officer defendants remain.

## III.  Conclusion

The Fourteenth Amendment claims for use of excessive force, failure to intervene, and failure to protect claims against the correctional officers will proceed. Claims against the Connecticut Department of Correction, Lieutenant Cheney, Lieutenant Cauley, Captain Scagliarini, Mental Health Responding Employee Classon, Deputy Warden Johnson, and Captain Hollister are dismissed.

The Court enters the following additional orders.

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for Defendants, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

(11) The Court hereby appoints counsel for the limited purpose of conducting discovery on behalf of the plaintiff, including but not limited to discovery aimed at identifying more specifically which defendants took which actions against him, and which defendants failed to intervene. Appointed counsel shall also conduct all other discovery necessary, in counsel's professional judgment, to prepare the case for trial. If, after completing the discovery process (including defending any deposition of the plaintiff), appointed counsel wishes to withdraw from the action, he or she shall file a statement summarizing the work done for plaintiff and indicating a desire to withdraw. As long as the work done appears to be reasonable given the needs of the case, the Court will terminate counsel's appearance and plaintiff will return to *pro se* status. Of course, counsel may choose to remain in the case to represent the Plaintiff at trial and for purposes of responding to any dispositive motion the Defendants might file after the close of discovery, but counsel is not required to do so.

**SO ORDERED** this 26th day of April 2024 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge