UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRANDON ANTHONY RAMOS, | : | |
|     Plaintiff, | : | CASE NO. 3:24-cv-00006 (MPS) |
| | : | |
| v. | : | |
| | : | |
| LIEUTENANT CHENEY, et al., | : | |
|     Defendants. | : | JULY 3, 2025 |

**MEMORANDUM OF DECISION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Brandon Ramos, a sentenced inmate imprisoned at Cheshire Correctional Institution,[1] filed a complaint under 42 U.S.C. § 1983 alleging that correctional officers at MacDougall-Walker Correctional Institution ("MacDougall") used excessive force against the plaintiff while detaining him during a fight with another inmate and then let that other inmate assault the plaintiff while he was detained. *See* ECF No. 13 ¶¶ 1–5. The Court permitted the plaintiff's Fourteenth Amendment claims for use of excessive force, failure to intervene, and failure to protect to proceed against the correctional officer defendants. *See* ECF No. 14 at 8.

The defendants have filed a motion for summary judgment on all claims against them, asserting that the plaintiff failed to exhaust his administrative remedies before filing his complaint. ECF No 46 at 1. The defendants have submitted a memorandum of law in support of their motion (ECF No. 46-1), a Local Rule 56(a)1 statement of material facts (ECF No. 46-15), and supporting exhibits (ECF No. 46-2 to 46-14). The plaintiff has filed a response. ECF No. 48.

---

[1] The plaintiff is currently serving an eight-year prison sentence at Cheshire Correctional Institution. *Offender Information Search*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=427525 (last visited July 1, 2025). The Court may take judicial notice of this website. *See, e.g.*, *Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of Connecticut DOC offender information search).

After thoroughly considering the materials submitted by the parties, the Court will grant the defendants' motion for summary judgment for reasons stated below.

## I. FACTS

The plaintiff was imprisoned at MacDougall from April 13, 2022, to July 25, 2022.[2] ECF No. 46-15 ¶ 1. While there, the plaintiff got into a fight with two other inmates on July 19, 2022. ECF No. 46-15 ¶ 2. Prison staff called a "code" to summon correctional officers to break up the fight. *Id.* ¶ 3. Officers responded to the code and used physical force to break up the fight. *Id.* ¶¶ 4–5. The plaintiff resisted the officers' attempts to physically restrain him. *Id.* ¶¶ 7–8. Officers then used chemical agent to subdue the plaintiff. *Id.* ¶¶ 9–10. Another inmate kicked the plaintiff while the plaintiff was subdued. *See id.* ¶ 11. Officers subdued that inmate and led him away. *Id.* ¶ 12. Prison officials issued disciplinary reports to the plaintiff and the two other inmates he had fought. *Id.* ¶ 13. The plaintiff filed no grievances related to the July 19, 2022, incident. *See id.* ¶¶ 18–20.

---

[2] The relevant facts are taken from defendants' Local Rule 56(a)1 statement and supporting exhibits. *See* ECF No. 46-15. Local Rule 56(a)1 requires a party moving for summary judgment to file "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)1. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)2. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Defendants informed Plaintiff of this requirement. *See* ECF No. 46-16 ("Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Loc. R. of Civ. Pro. 56(b)"). Despite receiving notification of this requirement, Plaintiff did not submit a Local Rule 56(a)2 statement.

That Plaintiff is unrepresented does not excuse him from complying with the court's procedural and substantive rules. *See Evans v. Kirkpatrick*, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Treistman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (noting that "when a plaintiff is proceeding *pro se*, all normal rules of pleading are not absolutely suspended" (internal citation and quotation marks omitted)). Thus, the facts contained in Defendants' Local Rule 56(a)1 statement, where supported by evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions[.]").

## II. LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*,

3

224 F.3d 33, 41 (2d Cir. 2000).

## III. DISCUSSION

Defendants now move for summary judgment, asserting that the plaintiff failed to exhaust his administrative available remedies before filing his complaint. *See* ECF No. 46 at 1.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F.App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that

the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Exhaustion of administrative remedies is an affirmative defense. *See Jones*, 549 U.S. at

5

216. Thus, the defendant bears the burden of proof. *See Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Once the defendant establishes that administrative remedies were not exhausted before the inmate commenced the action, a plaintiff must present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See id.*

The Connecticut Department of Correction ("DOC") "requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('A.D. 9.6')," which provides procedural rules and deadlines for processing general inmate requests. *Riles v. Buchanan*, 656 F.App'x 577, 579 (2d Cir. 2016). Defendants have appended to their motion the version of A.D. 9.6 that was in effect on July 19, 2022. *See* ECF No. 46-5. This version of A.D. 9.6 is also available on the DOC website. *See* DOC, *Administrative Directive Chapter 9.6*, https://portal.ct.gov/-/media/doc/pdf/ad/ad9/ad_0906_effective_04302021.pdf?rev= b9edceb79dbd4cbdb9dd09297664d04a&hash=E8BE08DD74CEE3C3C23D1FCB63DDAE0E (last visited July 1, 2025).[3] A.D. 9.6 contains grievance procedures consisting of four steps: (1) informal resolution; (2) filing a Level 1 grievance; (3) filing a Level 2 grievance; (4) and filing a Level 3 grievance. *Harvin v. Cheney*, No. 3:23CV328 (MPS), 2025 WL 1616682, at *9–10 (D. Conn. June 20, 2025) (describing details of A.D. 9.6's procedures).

Defendants have submitted declarations and DOC records showing the plaintiff failed to submit any grievances in accordance with A.D. 9.6's procedures. *See* ECF No. 46-15 ¶¶ 18–20; ECF No. 46-12 ¶ 18 (declaration from Morrell Walker asserting that the plaintiff "filed no

---

[3] "The Court can take judicial notice of the State of Connecticut Administrative Directives on the Department of Correction's website." *Quint v. Robinson*, No. 3:23-CV-226 (VAB), 2024 WL 2801718, at *2 n.1 (D. Conn. May 31, 2024).

grievances from July 1, 2022, to June 30, 2023[.]"); ECF No. 46-13 ¶ 24 (declaration from Jericka Brown asserting that the plaintiff "filed no Health service remedy or HSR between July 1, 2022[,] and June 30, 2023."); ECF No. 46-14 ¶ 18 (declaration from Tamika McGee asserting that the plaintiff "filed no grievances from July 25, 2022, to August 25, 2022."); ECF No. 46-8 (Administrative Remedies Log showing no grievances filed by the plaintiff).

The defendants have also submitted transcripts from the plaintiff's deposition, at which the plaintiff testified that he was "100 percent" certain he filed a Level 1 grievance. ECF No. 46-6 at 20. But the plaintiff could not give "an exact date" that he filed it and "ha[d] been waiting for the FOI officer to give [him] the grievance." *Id.* The plaintiff maintained that prison officials "never responded to [the grievance]." *Id.* When asked whether the plaintiff filed any other grievances, he testified that he only filed "inmate request form[s]" but no other grievances. *See id.* at 20–21. The plaintiff testified that he took no action after filing the additional inmate request forms. *See id.* at 26.

The defendants have also submitted a Level 1 grievance signed and dated by the plaintiff on August 24, 2022. *See* ECF No. 46-10. The Level 1 grievance form contains no decision and would not have been procedurally compliant if filed. *See* ECF No. 46-1 at 12 (correctly noting that this grievance was not accompanied by an attachment showing the plaintiff attempted informal resolution, was untimely, and did not request a clear resolution or outcome).

Even assuming that the plaintiff attempted informal resolution under A.D. 9.6(6)(a)(i) (step 1) and filed a procedurally compliant Level 1 grievance under A.D. 9.6(6)(a)(ii) (step 2), "[a] plaintiff who files a Level 1 grievance will not be found to have exhausted his remedies if he had not pursued the available remedy of filing a level [2] grievance" under A.D. 9.6(6)(b)(ii)

7

(step 3). *Rosa v. Biela*, No. 3:22-CV-865 (VAB), 2025 WL 1488024, at *6 (D. Conn. May 23, 2025) (cleaned up). No evidence before the Court shows that the plaintiff filed a Level 2 grievance satisfying the third step in the administrative grievance process.

    Read liberally, the plaintiff's assertions in his response suggest that he did not file a Level 2 grievance because he received no response to his Level 1 grievance. *See* ECF No. 48 at 1. The Level 1 grievance form signed and dated by the plaintiff on August 24, 2022, corroborates the plaintiff's assertion that he received no response to his Level 1 grievance. *See* ECF No. 46-10. But the plaintiff's failure to receive a response to a Level 1 grievance did not preclude him from filing a Level 2 grievance.

    The plaintiff is correct that the Administrative Directives provide that a "response to the level 1 review shall be issued in writing within 30 business days of receipt the CN 9602, Inmate Grievance Form-Level 1," that "[t]he response shall include the disposition, date of the disposition, and reason for the disposition," and that "[t]he Level 1 Reviewer shall provide the inmate a CN 9604, Inmate Grievance Appeal Form – Level 2." A.D. 9.6(6)(b)(3)–(4); ECF No. 48 at 1 (quoting portions of these directives). But A.D. 9.6 also provides that "[i]f the inmate does not receive a response to the CN 9602, Inmate Grievance Form- Level 1, the inmate shall file a CN 9604, Inmate Grievance Appeal Form – Level 2, within 65 calendar days from the date that the initial CN 9602, Inmate Grievance Form- Level 1, was documented in the CN 9609, Administrative Remedies Log." A.D. 9.6(b)(ii)(2). Thus, the Administrative Directives require an inmate to file a Level 2 grievance even if the inmate receives no response to his Level 1 grievance. *See*, *e.g.*, *Simms v. Cuzio*, No. 3:21CV00492(SALM), 2022 WL 3107150, at *9 (D. Conn. Aug. 4, 2022) ("If plaintiff had filed a Level 1 grievance . . . and received no response, or

8

a rejection, he would have been required to file a Level 2 Grievance appeal, in order to exhaust his administrative remedies"). Because the record contains no evidence that the plaintiff filed a Level 2 grievance, there is no genuine issue of material fact that the plaintiff failed to exhaust his administrative remedies. *Dean v. Iozzia*, No. 3:18-CV-1861 (KAD), 2020 WL 376802, at *5 (D. Conn. Jan. 23, 2020), *aff'd*, No. 20-729, 2022 WL 619693 (2d Cir. Mar. 3, 2022) (granting summary judgment in favor of defendants where plaintiff maintained he received no response to his Level 1 grievance but record contained no evidence that plaintiff filed a Level 2 grievance appeal).

Because the defendants have met their burden of showing that the plaintiff failed to exhaust his administrative remedies, the burden shifts to the plaintiff to present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See Hubbs*, 788 F.3d at 59. The plaintiff has not submitted any evidence showing he exhausted his administrative remedies by filing a Level 2 grievance, nor does he maintain in his response that he did. *See* ECF No. 48. Thus, to avoid summary judgment, the plaintiff must establish that administrative remedies were unavailable to him.

The plaintiff does not maintain that administrative remedy procedures were unavailable to him because they "operate[ ] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *Ross*, 578 U.S. at 643, that the procedures are "so opaque that [they] become[ ], practically speaking, incapable of use," *id*., or that "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. Rather, liberally read, the plaintiff's

9

response claims that administrative remedies were unavailable to him because prison officials did not respond to his Level 1 grievance. *See* ECF No. 48 at 1.

Prison officials' failure to respond to the plaintiff's Level 1 grievance does not render administrative remedies unavailable to him. *See Taylor v. New York City Dep't of Corr.*, 849 F. App'x 5, 8 (2d Cir. 2021) (summary order) (concluding that "prison officials' failure to respond to some of [plaintiff's] grievances did not render the IGRP administrative procedure unavailable" because "[t]he IGRP contemplates that prison officials might not always respond to inmates' grievances" and "sets forth the procedure to follow in such circumstances."); *Taveras v. Semple*, No. 3:15CV00531(SALM), 2023 WL 112848, at *10 (D. Conn. Jan. 5, 2023) (relying on *Taylor* to conclude that "the administrative remedies under A.D. 9.6 were not unavailable to plaintiff merely 'because prison officials did not respond to his' informal request and grievance."); *Gibbs v. Pillai*, No. 3:20-CV-01119 (JAM), 2024 WL 1175533, at *4 (D. Conn. Mar. 19, 2024) (relying on *Taveras* to reach the same conclusion). Because the plaintiff did not exhaust administrative remedies available to him, summary judgment must enter in favor of the defendants. *See*, *e.g.*, *Dean*, 2020 WL 376802, at *5.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [ECF No. 46] is GRANTED. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 3rd day of July 2025 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge